Filed 1/30/15; unmodified opn. attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| JULIA ANNA BERTOLI et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SEBASTOPOL et al., <br><br> Defendants and Respondents. | A132916 <br><br> (Sonoma County Super. Ct. No. SCV 249181) <br><br> ORDER MODIFYING OPINION [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 20, 2015, be modified as follows:

1.     The language on page 13, last sentence of the first paragraph is deleted.

~~Thus, we dismiss appellants' second appeal in *Bertoli et al. v. City of Sebastopol et al.* (A134799), including Respondents' cross-appeal, and, if necessary, will consider any issues raised in that matter in the context of this case.~~

The sentence is replaced with the following language:

Thus, *Bertoli et al. v. City of Sebastopol et al.* (A134799), the related case, has been dismissed.

2.     The language on page 26, middle of the paragraph is deleted.

~~In fact, the very issue involved in this case is currently the basis for a petition for review in our own Supreme Court; persuasive evidence that this is an area of the law which remains in flux.  (See *City of San Jose v. Superior Court* (2014) 225~~

1

Cal.App.4th 75, review granted June 25, 2014, S218066 [noting in the case summary that the question presented is as follows: "Are written communications pertaining to city business, including email and text messages, which (a) are sent or received by public officials and employees on their private electronic devices using their private accounts, (b) are not stored on city servers, and (c) are not directly accessible by the city, 'public records' within the meaning of the California Public Records Act?"].)

It is replaced with the following language:

In fact, the very issue involved in this case is currently pending before our own Supreme Court; persuasive evidence that this is an area of the law which remains in flux. (*City of San Jose v. Superior Court* (2014) 225 Cal.App.4th 75, review granted June 25, 2014 S218066.)

3. The language on page 29 is deleted as follows:

Appellants' appeal from the post-judgment order determining the amount of attorney fees and costs in *Bertoli et al. v. City of Sebastopol et al.* (A134799), which includes Respondents' cross-appeal, is dismissed.

There is a change in the judgment. The disposition will now read as follows:

### III.  DISPOSITION

The judgment is reversed to the extent it orders appellants to pay attorney fees and costs pursuant to section 6259, subdivision (d).  In the interests of justice, each party shall bear its own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____
RUVOLO, P. J.

*Bertoli v. City of Sebastopol* A132916 modification

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JULIA ANNA BERTOLI et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF SEBASTOPOL et al.,<br><br>        Defendants and Respondents. | A132916<br><br>(Sonoma County Super. Ct.<br>No. SCV 249181) |

In this case involving the California Public Records Act (PRA) (Gov. Code, § 6250 et seq.), Julia Anna Bertoli (Bertoli) and her attorney David Rouda (Rouda) (collectively, appellants) appeal from the trial court's order finding their PRA litigation "clearly frivolous" and awarding costs and attorneys fees to the City of Sebastopol (City) and certain other respondents pursuant to Government Code section 6259, subdivision (d).[1]  Through the PRA litigation, Bertoli and Rouda were attempting to obtain copies of relevant emails or other electronically stored data contained on the hard drives of past and present City officials and employees, including both municipal computers and private electronic devices.  In making its frivolousness determination, the trial court found the PRA request to be unfocused and nonspecific, unduly burdensome, and an alarming invasion of privacy rights.  While we do not disagree with the trial court's characterization of the PRA request at issue, we conclude that, under the

---

[1] All statutory references are to the Government Code unless otherwise indicated.

particular circumstances of this case, the court's "clearly frivolous" finding should not stand. We therefore reverse the order for attorneys fees and costs.

## I. BACKGROUND

On July 3, 2009, Bertoli (then 15 years old) was involved in a tragic accident when she was struck by a car as she walked inside a crosswalk located on Highway 116, a highway owned by the State of California which runs through the City. As a result, Bertoli was rendered permanently physically and mentally disabled. Subsequently, Bertoli's family retained Rouda to represent her interests with respect to the accident.

### A.     *Requests for City Records Under the PRA*

On August 14, 2009, Rouda served the Sebastopol Police Department (Police) with an "amended" PRA request (Police Request) seeking all evidence, including photos, reports, audio logs, handwritten notes, and emails, with respect to Bertoli's July 3 accident. The Police Request also asked for any surveys, traffic or pedestrian counts, and letters or complaints received with respect to the intersection at issue, all for the past ten years. According to Rouda, the Police never provided any of the materials requested, claiming records of traffic collision reports were privileged. City claims never to have received the Police Request. However, it maintains that, in response to an earlier, August 10, 2009, PRA request, the Police produced a complete copy of the traffic collision report related to Bertoli's accident, handwritten notes of the investigating officer, and a report listing all accidents on Healdsburg Avenue for the past 10 years.[2] In addition, in July and September 2010, the City instructed Rouda to review the general traffic collision information provided and indicate which collision reports he would like to review so that they could be made available to him. According to the City, Rouda never requested any additional reports.

On March 31, 2010, Rouda submitted an additional PRA request to the City through its Planning Department (Request). The Request contained 62 different categories of public records sought by Rouda. Some of these items were relatively

---

[2] It appears, however, that the handwritten notes were not disclosed until April 2011 in connection with pending litigation regarding Bertoli's accident.

straightforward. For example, number 28 asked for any and all "City of Sebastopol General Plan documents, amendments and modifications, 1990 to present." Or, pursuant to number 53, the City was asked to provide "[a]ny and all documentation of or relating to the City of Sebastopol's Annual Report on Growth Management 1999 to present." Other items, however, were significantly more open-ended and nonspecific. One such request was number 24 which sought: "Any and all documents, including but not limited to traffic impact studies, reports, evaluations, and/or consultations, and correspondence (including but not limited to emails, letters, notes, records of phone calls), relating to Highway 116 through the entire city limits of Sebastopol, CA, 1995 to present. This includes but is not limited to documents and correspondence related to permit approval for developments or work on property abutting or fronting Highway 116/Healdsburg Avenue and/or on property that at the time of permit application potentially could or would increase traffic on Highway 116/Healdsburg Avenue." Another example was number 47, which asked for "[a]ny and all maintenance records for work planned, started and/or completed on Healdsburg Avenue/116 from the intersection with North Main Street through the intersection with Murphy Avenue, including but not limited to the entire intersections of Florence Ave/116 and of Cleveland Ave./116, Sebastopol, for any and all times." When he submitted the Request, Rouda indicated that he would prefer to receive responsive documents in electronic format whenever possible.

After asserting its right to a 14-day extension of the usual 10-day response period for a PRA request based on the voluminousness of the public records demanded, the City responded to the Request by letter dated April 22, 2010.[3] In general, the City objected to the 62 separate requests as "overly extensive, overly broad and, in some cases, unlimited in time." It noted that many of the requests were "not reasonably limited to a certain file or project" and required "numerous City departments to search their entire catalog of

[3] Specifically, section 6253, subdivision (c) permits an extension of the 10-day time limit for production of public records in response to a PRA request under "unusual circumstances," which are defined to include "[t]he need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are demanded in a single request." (§ 6253, subd. (c)(2).)

3

records." This was particularly true because the City does not keep files by street name or intersection, but many of the requests spoke in terms of documents relevant to the area in and around Bertoli's accident site. The City also reported that its seven-year document retention policy might limit the number of responsive documents available. Thereafter, the City responded to each specific request by (1) attaching certain responsive documents; (2) indicating that no responsive documents existed; (3) attaching a list of files that might contain responsive documents; (4) designating certain departments and/or files where specific responsive documents could be found; (5) referencing certain responsive documents already provided to Rouda; (6) objecting to a particular request as too ambiguous or overbroad for a response; and/or (7) indicating other agencies (such as Caltrans) which were likely to possess responsive documents.

The City stated that it was happy to work with Rouda to narrow any overbroad requests. Further, since the volume of potentially responsive documents was so large, it made space available in a City break room on Tuesdays and Thursdays beginning on June 8, 2010, for Rouda to review any requested files and designate which documents he would like to have copied. On June 7, 2010, Rouda sent a formal reply to the City's April 22 response to the Request. Generally, Rouda challenged the City's characterization of many of the requests as vague or overbroad; identified certain responses as inaccurate or incomplete; highlighted requests requiring additional responses from the City; and argued that the possession of potentially responsive documents by other agencies did not obviate the City's obligation to produce responsive documents in its possession. Rouda also stated, however, that he would review relevant files and file indexes, if available, from each department and identify the files he wanted to inspect. Initially, he indicated 87 engineering department files for review. In the end, Rouda spent 20 days over the course of three months reviewing 65,000 pages of potentially relevant documents from 400 files before designating 16,000 pages for scanning at his expense. According to the City, these 65,000 pages included hard copies of all "reasonably identifiable" emails and other electronically stored information (ESI) relevant to the Request.

4

Rouda, in contrast, believed that potentially responsive ESI existed outside of the paper files provided by the City. On June 2, 2010, he sent an email to the City suggesting that the burden on City staff related to the Request could be alleviated by the hiring, at Rouda's expense, of a neutral third-party collection company specializing in the retrieval of ESI. Such a company would conduct searches on all municipal computers, servers, and electronic storage devices, as well as on any personal computers used by City employees to perform City work outside of the office. Rouda suggested nine primary search terms related to the location of Bertoli's accident, and a host of possible secondary search terms. On June 4, 2010, Rouda facilitated a conference call between the City and an ESI collection company representative to further explain the third-party ESI collection process. And, in his June 7 reply to the City's PRA response, Rouda reiterated his offer to hire a third-party ESI collector and asked various questions regarding the number, type, and location of municipal and personal computers of City employees.[4] In a meeting on June 8, 2010, however, the City declined Rouda's offer for third-party ESI retrieval.

On June 22, 2010, Rouda filed a personal injury lawsuit on Bertoli's behalf naming the State of California, the City, and 35 other defendants. (*Bertoli v. City of Sebastopol et al.* (Super. Ct. Sonoma County, 2010, No. SCV-247619).) The lawsuit claimed that Bertoli's significant injuries were caused by dangerous conditions on and around the public roadway and adjacent private properties. Thereafter, in its formal July 22, 2010, response to Rouda's June 7 PRA reply, the City reiterated its position regarding third party ESI retrieval, stating: "The City respectfully declines your offer to hire an unbiased third party to conduct a search of the City's computer storage. We are aware of no authority that requires the City to comply with such a request." The City further indicated that the writings of individual Sebastopol City Council (City Council) members were not disclosable public records for purposes of the PRA because an individual government official is not a "local agency" as defined by the PRA. Finally, with respect to Rouda's paper document review, the July 22 letter also stated: "Now that

_____

[4] Rouda had previously requested this information on June 2 and 4, 2010.

5

you have filed suit against the City, you must complete your review promptly." Arguing that it was not required by the PRA to make documents available indefinitely, the City set a July 30 deadline for Rouda to complete his review.[5]

Rouda responded immediately to the City's letter, disagreeing with each of the City's stated positions. With respect to responsive ESI, Rouda indicated that electronic materials related to the conduct of the public's business are clearly "writings" for purposes of the PRA and asked the City to reconsider its response to his electronic search request. In fact, at some point, the Public Works Superintendent did conduct a word search for emails on his work computer and provided responsive documents to Rouda. Further, while at the Engineering Department conducting his paper document review on August 11, 2010, Rouda advised Sue Kelly, the City's Engineering Director, that he still wanted the City to produce responsive emails. Ms. Kelly told Rouda to send her something describing what emails he wanted from her. Thus, on August 12, 2010, Rouda responded to Ms. Kelly (Supplemental Request), indicating that she should search her email correspondence for emails to or from 76 different people/organizations. Additionally, emails to or from 53 of these identified people/organizations should be further filtered by searches for 14 specified subjects.

The City sent a final letter to Rouda on August 20, 2010, seeking to resolve "ongoing issues" regarding the Request and the Supplemental Request. The City first stated that, if Rouda needed more time than the three months provided for paper document review, he would need to "seek court intervention." Next, the City indicated that it stood by its refusal to produce the individual communications of City Council members and that such records would "not be produced without a court order." Finally, with respect to the Supplemental Request, the City asserted that it was not reasonable as it would require the City to conduct more than 700 individual email searches. The City

---

[5] This deadline was extended several times, until Rouda's paper document examination was completed on September 10, 2010. On September 12, 2010, Rouda complained that he was unable to complete the requested document review in the time allotted by the City. Thereafter, he was allowed additional time to review documents in the office of the City's attorney on September 16, 2010.

refused to undertake "such a daunting and burdensome task," noting that it would require City staff to "spend an excessive amount of time performing the searches and also reviewing the results to remove irrelevant and privileged matters." The City did state, however, that it was willing to discuss "reasonable parameters" for an email search.

**B.** *The Petition for Writ of Mandate*

On February 18, 2011, appellants filed a petition for writ of mandate (Petition) in Sonoma County Superior Court pursuant to section 6258, which provides that "[a]ny person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under [the PRA]." As respondents, the Petition named the City—including the City Council and nine specific City departments—as well as 33 individuals (collectively, Respondents). The individual Respondents designated included five former City employees; eight former members of the City Council, including one deceased member; fifteen current employees, including six department heads; and five current members of the City Council, including the current Mayor and Vice Mayor.

The Petition sought an order mandating that the City and its departmental employees produce ESI, including emails, responsive to the Request and the Police Request.[6] Specifically, the Petition maintained that the City refused to search or produce responsive ESI and also refused to allow a neutral third party ESI collection company to retrieve the ESI and perform a search. Appellants therefore requested an order allowing "a neutral third party ESI collection company such as TERIS access to copy Respondents' electronic storage devices inside and outside of City of Sebastopol department offices where city business related ESI is or may be stored." Indeed, the Petition claimed that, given the City's "bias and resistance," there was no way that appellants could be assured of gaining access to all responsive ESI short of an order allowing such third-party access. Appellants further requested that, once all pertinent

_____

[6] The Petition also sought certain paper documents it alleged were improperly withheld in connection with the Police Request.

7

electronic storage devices were copied, the ESI company be allowed to run searches of the copied data using designated search terms. Any results would then be turned over to the City, which would be required to review the material and create a privilege log within one month. Ultimately, under appellants' plan, any ESI for which the City claimed privilege would be subject to in camera review by the trial court to determine whether or not it was disclosable.

The City, unsurprisingly, opposed the Petition, describing it as an "improper, baseless, 'scorched earth' massive invasion of privacy and horrendous waste of precious City resources" which would require the City and 34 private individuals to "hand over" the hard drives on at least 109 computers, laptops and PDA's. The City argued with respect to the individually named Respondents that any information contained on their personal computers and cell phones did not constitute "public records" pursuant to the PRA and was therefore not properly subject to a PRA request. Moreover, the City argued that allowing a PRA request to reach the private electronic devices of municipal officials and employees would have a "tremendous chilling effect" on public service. In addition, the City noted that none of these individuals, many of whom no longer have any affiliation with the City, had been served with the underlying Request which ultimately led to the Petition. Finally, in extensive declarations filed with the trial court, each of the named Respondents indicated that they, in fact, had no public records on their personal computers or phones that had not already been produced to appellants.

With respect to the City, itself, the City argued that the Petition should be denied as unduly burdensome, emphasizing the confidentiality of many City documents and the "hundreds of hours" it would take to sort through all of the potentially responsive documents that would be identified by various computer searches in order to extract privileged material. The City further contended that it had reasonably complied with the Request and "reasonably produced all identifiable ESI and emails." In this regard, the City Manager declared that it was his understanding that "significant emails are printed by the department heads and filed in the corresponding project files." And, according to both the City's Engineering Director and the City's Planning Director, this was their

8

practice. Under such circumstances, the City maintained that it was justified in refusing to permit appellants carte blanche to copy the designated hard drives.

In reply, appellants argued that the City misunderstood the invasiveness of the computer search process and exaggerated the number of responsive documents that would be generated, failing to appreciate that multiple search terms would be applied simultaneously to filter the results. They further asserted that the writings of individual City Council members and any public documents maintained on private computers do fall within the purview of the PRA. Appellants emphasized that they repeatedly asked for information regarding the location of all responsive ESI, but received no response from the City. Moreover, although the Request and the Police Request were directed solely to the City, Rouda declared that he made clear to the City on numerous occasions that he was seeking all responsive ESI regardless of its location. Finally, appellants characterized as implausible the City's claim that no City Council members, who worked exclusively from personal computers and private email addresses, possessed any responsive public records on those private devices. Appellants reiterated their request that the trial court order use of a third-party ESI collection company to obtain all responsive ESI from the Respondents.

After the trial court published its tentative decision in the matter, however, Rouda took a much more circumscribed position during oral argument. He stated that his sole intention in filing the Petition was to assist his client, Bertoli, and that he never intended to unduly burden the City. Further, Rouda stressed the lack of settled law in this area, and also argued that his decision to name so many individual Respondents stemmed from the City's unwillingness to provide him with the location of computers relevant to the Request, despite numerous attempts by him to obtain that information. Finally, Rouda indicated that the hiring of a third party ESI collection company was a suggestion, not a demand, and that he would have been happy if the City had performed some type of limited email search on its own.

By order dated June 17, 2011, the trial court—having "carefully weighed the competing interests at stake"—denied the Petition. In its order, it noted that the City had

9

shown a "remarkable degree of openness and cooperation" in its response to Bertoli's PRA requests; that it had "reasonably complied with access obligations pertaining to electronically stored information;" and that it "did not unreasonably restrict access to public records." In contrast, the trial court characterized the relief sought in the Petition as an "unprecedented fishing expedition" which would "constitute an alarming invasion of property rights, an extravagant use of limited city resources, and an unwanted green light for immoderate discovery." With respect to the personal computer records of the individually-named Respondents, the trial court concluded that there was "patently no basis" for the requested access as none of the named individuals had previously been served with a request to produce computer hard drives. Moreover, the declarations submitted by the individual Respondents amply showed that there were no public records on the private computers at issue. The trial court went on to reject the Petition with respect to the municipal computers as "not consistent with public interest." Specifically, it concluded that "[t]he burden to be imposed would be excessive, and the precedent to be set would be undesirable."

Notice of Entry of Order was served on June 23, 2011, with Notice of Entry of Judgment served on July 14, 2011. Thereafter, on August 2, 2011, appellants filed an extraordinary writ pursuant to section 6259, subdivision (c), with this court challenging the trial court's decision.[7] We summarily denied the writ. (*Bertoli et al. v. Superior Court of Sonoma* (Aug. 9, 2011, A132793) (nonpub. order).) A subsequent petition for

---

[7] Section 6259, subdivision (c), provides in relevant part: "[A]n order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ. Upon entry of any order pursuant to this section, a party shall, in order to obtain review of the order, file a petition within 20 days after service upon him or her of a written notice of entry of the order, or within such further time not exceeding an additional 20 days as the trial court may for good cause allow. If the notice is served by mail, the period within which to file the petition shall be increased by five days."

Supreme Court review was also denied. (*Bertoli et al. v. Superior Court* (Sept. 28, 2011, S195819).)

## C.     *The Motion for Attorneys Fees and Costs*

In the meantime, Respondents had also filed a request for attorneys fees and costs in accordance with section 6259, subdivision (d), which provides in relevant part as follows: "If the court finds that the plaintiff's case is clearly frivolous, it shall award court costs and reasonable attorney fees to the public agency." According to Respondents, the Petition was "clearly frivolous" for purposes of this statute because it named among the Respondents 34 individuals who had never been served with the underlying PRA request. Moreover, Respondents argued that the personal computers and cell phones sought in the Petition were, by definition, not public records under the PRA and therefore manifestly not subject to disclosure. Finally, with respect to the City, Respondents claimed that the Petition was clearly frivolous because of the significant additional burden it would impose on the municipality, despite its prior reasonable efforts to comply with the Request. Respondents sought attorneys fees in the amount of $42,280 to "punish" appellants for filing their "clearly frivolous" Petition.

As a part of its June 17, 2011, order, the trial court agreed with Respondents, finding the Petition to be "clearly frivolous." It therefore awarded costs and attorneys fees to Respondents pursuant to section 6259, subdivision (d). Indeed, the trial court declared that "[i]n nearly 25 years of judging, this court has not seen discovery disproportionality of this magnitude before." The actual amount of the fee award was to be fixed through a noticed motion.

Thereafter, Respondents filed a noticed motion increasing the amount of attorneys fees requested to $64,010. In response, appellants argued that the amount awarded should reflect "reasonable compensation for reasonable attorney hours spent" rather than punishment. They then went on to argue that the fees sought were excessive for numerous reasons. And, despite the fact that he was a named petitioner, Rouda also requested that any fee award not be enforceable against him personally, as he was only pursuing the Petition as Bertoli's attorney. In reply, Respondents again increased the

11

amount of fees sought, this time to $82,380, to compensate them for additional time spent on the unsuccessful extraordinary writ and petition for Supreme Court review filed by appellants with respect to the underlying merits of the Petition. Ultimately, on December 16, 2011, the trial court set the award of attorneys fees and costs at $44,630, applicable to all petitioners, including Rouda.[8] Notice of Entry of Order was served on January 6, 2012, with Notice of Entry of Judgment served on January 20, 2012.

Appellants filed their notice of appeal with respect to the trial court's finding of clear frivolousness on August 10, 2011. A notice of appeal challenging the amount of fees actually awarded was separately filed on March 2, 2012, in *Bertoli et al. v. City of Sebastopol et al.* (A134799).

## II. DISCUSSION

### A.    *Appealability and Standard of Review*

Our previous denial of appellants' request for a writ of mandate pursuant to subdivision (c) of section 6259 has conclusively resolved that the trial court's denial of the Petition was proper. (*Crews v. Willows Unified School Dist.* (2013) 217 Cal.App.4th 1368, 1373 (*Crews*).) However, "[a]n order granting or denying attorneys fees under the [PRA] is reviewable on appeal from a final judgment in the proceeding." (*Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1344, fn. 2, citing *Butt v. City of Richmond* (1996) 44 Cal.App.4th 925 (*Butt*).) Here, as set forth above, appellants properly appealed from the judgment that denied the Petition and found Respondents entitled to attorneys fees and costs under section 6259, subdivision (d). In addition, appellants filed a second notice of appeal from the subsequent order and judgment determining the exact amount of those attorneys fees and costs.

---

[8] On December 16, 2011, Respondents filed a motion to dismiss this appeal, arguing that it was premature, as the actual amount of fees had not yet been set. We denied the motion on January 5, 2012. As stated above, the amount of fees was set in the trial court on December 16. This award is currently on appeal in a separate matter, trailing resolution of these proceedings. (*Bertoli et al. v. City of Sebastopol et al.* (A134799).) We take judicial notice of our file in that appeal. (Evid. Code, § 452, subd. (d).)

12

Under similar circumstances, the Third District in *Crews* concluded that it had jurisdiction under the first notice of appeal (establishing the entitlement to attorneys fees under section 6259, subdivision (d)) to review the propriety of the actual fees subsequently awarded. (C*rews*, *supra*, 217 Cal.App.4th at p. 1379.) Specifically, the *Crews* court cited prior case law holding that " 'when a judgment awards costs and fees to a prevailing party and provides for the later determination of the amounts, the notice of appeal subsumes any later order setting the amounts of the award.' " (*Ibid*., quoting *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998.) It therefore dismissed Crew's second appeal fixing the amount of attorney fees and costs. (C*rews*, *supra*, 217 Cal.App.4th at p. 1379.) We will follow the same procedure in this case. Thus, we dismiss appellants' second appeal in *Bertoli et al. v. City of Sebastopol et al.* (A134799), including Respondents' cross-appeal, and, if necessary, will consider any issues raised in that matter in the context of this case.

*Crews* also lays to rest the parties' dispute regarding the appropriate standard of review to be applied in this court to the trial court's determination of clear frivolousness under section 6259, subdivision (d). In *Crews*, the Third District noted that de novo review of an award of fees and costs is appropriate " 'where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Crews*, *supra*, 217 Cal.App.4th at p. 1379.) Since an award of attorneys fees and costs to a public agency pursuant to section 6259, subdivision (d), requires consideration of whether the PRA request at issue was frivolous within the meaning of that statute, the *Crews* court concluded that independent review of such a determination is warranted. (C*rews*, *supra*, 217 Cal.App.4th at p. 1379; see also *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 454 (*SCERS*).) Of course, any factual findings made by the trial court in reaching this ultimate legal conclusion must be upheld if supported by substantial evidence. (*Crews*, *supra*, 217 Cal.App.4th at p. 1379; see also *SCERS*, *supra*, 195 Cal.App.4th at p. 454.)

**B.** *Statutory Framework Related to PRA Requests*

When enacting the PRA in 1968, the Legislature expressly declared that, while it was "mindful of the right of individuals to privacy, . . . access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250; *County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1319-1320 (*Santa Clara*).) As the California Supreme Court has further explained in the PRA context: "Openness in government is essential to the functioning of a democracy. 'Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' " (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328-329.) California voters endorsed this broad policy of public access by approving Proposition 59 in 2004, a ballot initiative "which amended the state Constitution to explicitly recognize the 'right of access to information concerning the conduct of the people's business' and to provide that 'the writings of public officials and agencies shall be open to public scrutiny.' " (*Santa Clara*, *supra*, 170 Cal.App.4th at p. 1320, quoting Cal. Const., art. I, § 3, subd. (b)(1).)[9]

In addition to embracing the public's right to access, however, the PRA, as stated above, also incorporates explicit support for individual privacy rights. (§ 6250.) Indeed, "the express policy declaration at the beginning of the [PRA] 'bespeaks legislative concern for individual privacy as well as disclosure.' " (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282 (*Copley Press*).) Likewise, the right to access

---

[9] Thus, pursuant to subdivision (b)(2) of section 3 of article I of the California Constitution: "A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." Further, the PRA is modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552), so, "the judicial construction and legislative history of the federal act serve to illuminate the interpretation of its California counterpart." (*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 447 (*ACLU*).)

14

enshrined in the California Constitution by Proposition 59 is expressly qualified by the assurance that such right of access is not meant to supersede or modify existing privacy rights. (Cal.Const., art. I, § 3, subd. (b)(3).) Given these dueling considerations, " 'judicial decisions interpreting the [PRA] seek to balance the public right to access to information, the government's need, or lack of need, to preserve confidentiality, and the individual's right to privacy. [Citations.]' " (*Copley Press*, *supra*, 39 Cal. 4th at p. 1282.)

To implement its goal of public access, the PRA provides that "[p]ublic records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided." (§ 6253, subd. (a).) Moreover, the term " '[p]ublic records' " is broadly defined to include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e).) Finally, for purposes of the PRA, a local agency is defined to include "a county; city, whether general law or chartered; city and county; school district; municipal corporation; district; political subdivision; or any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952." (§ 6252, subd. (a).)

The ESI sought by appellants in this case is clearly a type of public record that may be subject to disclosure under the PRA. Indeed, the PRA defines "writing" quite expansively to include "any handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." (§ 6252, subd. (g).) Moreover, section 6253.9, subdivision (a), provides that "any agency that has information that constitutes an identifiable public record not exempt from disclosure pursuant to this chapter that is in an electronic format shall make

15

that information available in an electronic format when requested by any person." Further, the agency is required to "make the information available in any electronic format in which it holds the information." (§ 6253.9, subd. (a)(1).) And, a requestor under the PRA is required to pay the cost of producing an electronic record, "including the cost to construct a record, and the cost of programming and computer services necessary to produce a copy of the record," when the PRA request "would require data compilation, extraction, or programming to produce the record."[10] (§ 6253.9, subd. (b)(2).)

Finally, a public agency faced with a PRA request has certain obligations under the PRA designed to promote effective access to identifiable public records. Specifically, "[w]hen a member of the public requests to inspect a public record or obtain a copy of a public record, the public agency, in order to assist the member of the public make a focused and effective request that reasonably describes an identifiable record or records, shall do all of the following, to the extent reasonable under the circumstances: [¶] (1) Assist the member of the public to identify records and information that are responsive to the request or to the purpose of the request, if stated. [¶] (2) Describe the information technology and physical location in which the records exist. [¶] (3) Provide suggestions for overcoming any practical basis for denying access to the records or information sought." (§ 6253.1, subd. (a).) However, a public agency is not required to fulfill these obligations under a number of statutorily delineated circumstances, including when that agency has made available an index of its records. (§ 6253.1, subd. (d)(3).)

---

[10] In fact, pursuant to subdivision (c)(4) of section 6253, a public agency may extend the time allotted for its response to a particular PRA request, if that request creates "[t]he need to compile data, to write programming language or a computer program, or to construct a computer report to extract data."

**C.** *Attorney Fees and Costs under the PRA*

As discussed above, the PRA also contains special provisions with respect to the award of court costs and attorneys fees. Specifically, subdivision (d) of section 6259 provides that "[t]he court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section." In contrast, public agencies such as the City are ordinarily not entitled to attorney fees and costs from a requestor who fails to secure public documents in a court challenge based on a PRA request. Rather, a public agency may recover its attorney fees and costs only if the trial court "finds that the plaintiff's case is clearly frivolous." (§ 6259, subd. (d).) The California Supreme Court has described these disparate fee provisions as "protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427.)

Appellant's sole argument in this action is that attorney fees and costs should not have been awarded to Respondents because the Petition was not "clearly frivolous" for purposes of section 6259, subdivision (d).[11] The PRA does not define the term "clearly frivolous" for purposes of an award of fees and costs under that statute. Recently, however, the Third District considered the issue and found useful the Supreme Court's analysis in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 (*Flaherty*), in which the high court articulated a test for determining whether an appeal is frivolous. (*Crews*, *supra*, 217 Cal.App.4th at pp. 1380-1381.) In *Flaherty*, the Supreme Court first noted that an appeal is not frivolous simply because it is without merit. (*Flaherty*, *supra*, 31 Cal.3d at p. 650.) The Court then endorsed the " 'obvious' " proposition that " 'the borderline between a frivolous appeal and one which simply has no merit is vague indeed.' " (*Ibid.*) Given the difficulty in drawing this line, the Court concluded that any sanction for prosecuting a frivolous appeal "should be used most sparingly to deter only the most egregious conduct." (*Id.* at pp. 650-651.) Ultimately, it held that "an appeal may be

---

[11] In support of appellants' position, we have received amicus curiae briefs from (1) Californians Aware, and (2) First Amendment Coalition and Ben Glass.

17

deemed frivolous only when prosecuted for an improper motive—e.g., to harass the respondent or for purposes of delay—*or* when lacking any merit—i.e., when any reasonable attorney would agree the appeal is totally without merit." (*Crews*, *supra*, 217 Cal.App.4th at p. 1381, citing *Flaherty*.)

In *Crews*, the court adopted the *Flaherty* paradigm when analyzing whether PRA litigation was "clearly frivolous" for purposes of section 6259, subdivision (d). (*Crews*, *supra*, 217 Cal.App.4th at pp. 1380-1383.) Although *Flaherty* did not involve a finding of *clear* frivolousness, the Third District reasonably concluded that "[t]he addition of the adverb 'clearly' to frivolous does not change the test for purposes of section 6259, subdivision (d). Since a frivolous action is one entirely lacking in merit, there can be no lower standard for a 'clearly frivolous' action." (*Crews*, *supra*, 217 Cal.App.4th at p. 1381.)

*Crews* involved a PRA request by a newspaper publisher seeking one year of emails to and from the Superintendent of the Willows Unified School District (District). The District indicated that it would comply with what the appellate court later characterized as a "burdensome request," and ultimately turned over 60,000 emails, with only 3,200 pages withheld under claims of privilege. (*Crews*, *supra*, 217 Cal.App.4th at pp. 1371-1372.) On the day the District had previously indicated that it would begin turning over the requested emails, Crews filed a PRA petition in the superior court seeking to compel production of the promised documents. After reviewing the withheld documents in camera, the trial court concluded that the District had not improperly withheld any public records. It denied the petition and, finding it to be "clearly frivolous," awarded attorneys fees and costs to the District in the amount of $56,595.50. (*Id*. at pp. 1372-1373, 1377.) Specifically, the trial court found the petition frivolous because it failed to result in any benefit to Crews, as the District was already complying with his request at the time he served the petition on the agency. (*Id.* at p. 1377.)

The appellate court reversed the award of fees and costs. In particular, it concluded that the petition was not clearly frivolous because Crews used it (1) to confirm that the District had not improperly withheld any public records, and (2) to challenge

whether the District should properly have produced the emails in their "native" format rather than in portable document format (PDF). (*Crews*, *supra*, 217 Cal.App.4th at pp. 1373-1374, 1382-1385.) Although the petition failed to generate the disclosure of any improperly withheld documents and Crews' attempt to obtain the emails in "native" format was ultimately unsuccessful, the Third District concluded that the petition was not completely lacking in merit or brought for an improper purpose. Thus, an award of fees and costs to the District pursuant to section 6259, subdivision (d) was improper. (*Id.* at pp. 1383-1385.)

We find the analytical structure set forth in *Flaherty* and adopted in *Crews* particularly appropriate in the PRA context where, pursuant to subdivision (b)(2) of section 3 of article I of the California Constitution, a statute must be "broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." An interpretation of section 6259, subdivision (d), which permits an award of attorneys fees and costs " 'to deter only the most egregious conduct' " by a PRA petitioner clearly advances the people's right of access to public records. (*Crews*, *supra*, 217 Cal.App.4th at p. 1381, quoting *Flaherty*.) Thus, with these standards in mind, we turn to the trial court's award of attorneys fees and costs in this case.

## D. *The Trial Court's "Clearly Frivolous" Determination*

Preliminarily, we conclude that the record in this case does not support the premise that appellants filed the instant action for an improper purpose, that is to harass Respondents or for purposes of delay. In fact, the trial court noted that the underlying accident which generated the Request was "indeed serious" and that, to a certain extent, it understood Rouda being zealous for his client. Further, Respondents' argument that appellants' motives were somehow questionable because the Request was proffered "as discovery for use in personal-injury litigation" is unavailing. By its plain terms, the PRA requires that public records be made available to "every person in this state" and further provides that "any person" aggrieved by a refusal to disclose public records may seek relief through PRA litigation. (§§ 6250, 6253, subd. (a), 6258.) Thus, unless a petitioner submits a PRA request for an *improper* purpose (such as harassment or delay), the

19

petitioner's motive in making the request is essentially irrelevant. (See § 6257.5 ["This chapter does not allow limitations on access to a public record based upon the purpose for which the record is being requested, if the record is otherwise subject to disclosure"].)

Indeed, in *Wilder v. Superior Court* (1998) 66 Cal.App.4th 77, 79 (*Wilder*), a case very similar to the one at hand, petitioner Wilder was struck by a Blue Line train operated by the Los Angeles County Metropolitan Transportation Authority (MTA). After Wilder made two PRA requests related to her accident, the MTA refused to disclose a number of documents, claiming that the records were prepared in anticipation of litigation and that Wilder had a plain, speedy, and adequate remedy at law because she could file a claim against the MTA and receive any disclosable documents through the discovery process. (*Id.* at pp. 79-81.) Wilder filed a petition for writ of mandate in the trial court seeking to compel disclosure of the records, but the trial court adopted the MTA's analysis and dismissed the writ. (*Id.* at p. 81.)

The Second District reversed. Noting that Wilder "did not cease to be a 'member of the public' when she was struck by the Blue Line," the *Wilder* court opined that, under the PRA, "[t]here is no exception for persons who may potentially have a claim for damages against a governmental agency." (*Wilder, supra,* 66 Cal.App.4th at pp. 82-83.) The appellate court went on to contrast a request under the PRA, which "can cover anything the person making the request suspects the agency might have in its files," with discovery, which "is limited to matters 'relevant to the subject matter involved in the pending action' which are themselves 'admissible in evidence' or 'appear[] reasonably calculated to lead to the discovery of admissible evidence.' " (*Id.* at p. 83 [quoting prior version of Code Civ. Proc., currently § 2017.010].) Moreover, the *Wilder* court recognized that "[t]he legislative purpose of expediency and immediate reviewability" embodied by the PRA "cannot be served by transforming a public record request into a drawn out discovery battle." (*Id.* at p. 84.) Rather, as a "member of the public," Wilder was "entitled to the broader categories of documents" in the timeframe available under the PRA. (*Id.* at p. 83.)

Similarly, in the present case, appellants' Request and related Petition were no less legitimate simply because they were pursued in anticipation of litigation. Indeed, the trial court's apparent conflation of discovery concepts with the PRA request at issue in these proceedings is cause for some concern. In its order denying the Petition, the trial court began its analysis with the statement: "This is an automobile accident case." It went on to characterize the Petition as, among other things, "an unwanted green light for *immoderate discovery*" (italics added). And, in finding the Petition clearly frivolous, the trial court declared: "In nearly 25 years of judging, this court has not seen *discovery disproportionality* of this magnitude before" (italics added). However, appellants' argument to the contrary notwithstanding, the record is clear that the trial court did apply the proper standard of clear frivolousness when assessing fees and costs against appellants herein, rather than the less stringent standard available for the imposition of discovery sanctions. (See, e.g., Code Civ. Proc., § 2023.030, subd. (a) [sanctions available against party who misuses discovery process without "substantial justification"]; *id.* § 2023.010, subds. (a), (e) & (h); *id.* § 2031.310, subd. (d).)

In sum, there was no basis for deeming appellants' motives improper. Thus, the trial court's conclusion that the matter was "clearly frivolous" can only be supported if the Petition, itself, was entirely lacking in merit. Put another way, in order to uphold the award of attorneys fees and costs in these proceedings, we must determine that "any reasonable attorney" would agree that the Petition was "totally" without merit. (See *Crews*, *supra*, 217 Cal.App.4th at p. 1381, citing *Flaherty.*) Under the particular facts of this case, we cannot reach this conclusion.[12]

Undeniably, the Petition and underlying Request in these proceedings were overly aggressive, unfocused, and poorly drafted to achieve their desired outcomes. Further, a request which, like the Petition and Request herein, "requires an agency to search an

---

[12] Given this result, we need not consider further the appropriateness of the trial court's December 16, 2011, order setting the amount of attorney fees and costs in this matter, which was initially challenged in appellants' second appeal. (See *Bertoli et al. v. City of Sebastopol et al.* (A134799).)

21

enormous volume of data for a 'needle in the haystack' " or which "compels the production of a huge volume of material" may be objectionable as "unduly burdensome." (*California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 166.) Indeed, under the PRA, a governmental agency is only obliged to disclose public records that can be located with *reasonable* effort and cannot be subjected to a "limitless" disclosure obligation. (*Ibid.*; see also *ACLU*, *supra*, 32 Cal.3d at p. 453.)

Pursuant to subdivision (a) of section 6255, disclosure of otherwise responsive public records may be blocked as overly burdensome if " 'on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record.' " (See *ACLU*, *supra*, 32 Cal.3d at p. 452; see also *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 477.) When weighing the benefits and costs of disclosure, any expense or inconvenience to the public agency may properly be considered. (*ACLU*, *supra*, 32 Cal.3d at pp. 452-453.) And, in fact, in this case, the trial court "carefully weighed the competing interests at stake," including the potential financial impact on the City, before denying the Petition.

A PRA request denied under section 6255, subdivision (a), as unduly burdensome, however, is not necessarily "totally without merit" and therefore subject to a finding of clear frivolousness. (See *Crews*, *supra*, 217 Cal.App.4th at p. 1381, citing *Flaherty*.) Indeed, it is easy to envision a situation in which a petitioner makes a strong case for disclosure, but, under the particular circumstances of the case, the public interest in nondisclosure still justifies withholding access to the public documents at issue. (Compare *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1345 [concluding that "whatever merit disclosure might otherwise warrant in principle is simply crushed under the massive weight of the Times's request in this case: the newspaper seeks almost five years of the Governor's calendars and schedules, covering undoubtedly thousands of meetings, conferences and engagements of every conceivable nature. We are not persuaded that any identifiable public interest supports such a wholesale production of documents"] (*Times Mirror*).) Here, although the trial court ultimately determined that the City had "reasonably complied with access obligations pertaining to electronically

22

stored information," and that the Petition, as drafted, was unduly burdensome and would "significantly compromise interests in privacy and confidentiality," appellants' position was not entirely baseless.[13]

Putting aside the issue of the private electronic devices for the moment, it is indisputable that any emails contained on the City's municipal computers, to the extent they contain "information relating to the conduct of the public's business," constitute "public records" for purposes of the PRA. (§ 6252, subd. (e); see also *Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1300 [noting that if a member of the city council had emailed from city offices discussing city business, "it is undeniable that the records would be 'public records' that must be produced"] (*Tracy Press*).) As discussed above, such materials are manifestly "writings" that are "prepared, owned, used, or retained by" a "local agency." (§§ 6252, subds. (e) & (g), 6253.9.) Further, under the particular circumstances of this case, appellants could reasonably have believed that responsive ESI did exist that had not been disclosed by the City, because Rouda had received responsive emails written to the City's Engineering Director, Sue Kelly, as part of a Caltrans PRA request that were not contained in the City's paper file disclosure. Additionally, the Public Works Superintendent did conduct a limited word search for emails on his work computer and was able to provide responsive documents to Rouda. Moreover, although the City later declared in its response to the Petition that its policy is to print out all "significant" emails and file them in the appropriate project files, it never denied appellants access to its ESI based on the premise that no additional responsive ESI existed. Rather, the City rejected appellants' requested ESI search set forth in the Supplemental Request because it was "daunting and burdensome" and therefore unreasonable. Indeed, even after refusing to comply with the Supplemental Request, the City still maintained that is was "willing to discuss reasonable parameters for an email search," some indication that such a search was not destined to be fruitless. Thus,

---

[13] Indeed, the trial court appears to have recognized this as well, stating: "If this had been done differently, the Court's response would probably be different, but I have to deal with what's on the table."

although ultimately "crushed under the massive weight" of the Request and the Petition, appellants' core position, seeking responsive ESI that had not been disclosed, was not completely without merit.[14] (Compare *Times Mirror*, *supra*, 53 Cal.3d at p. 1345.)

However, in addition to finding the Petition overly burdensome, the trial court, in making its clearly frivolous finding, was plainly influenced by its belief that the personal electronic devices of the numerous individual Respondents named in the Petition were beyond the purview of the PRA. Specifically, the trial court stated: "There is patently no basis for an adversarial attempt to gain access to the personal computer records. . . . Surfing personal computer records is not acceptable." Respondents, as well, repeatedly insist that a PRA search of private electronic devices is per se unreasonable.

In analyzing this issue, we note first that Respondents' repeated assertion that appellants were demanding that the trial court order "33 private individuals to turn over their 'personal computers, laptops, cell phones and other electronic devices' so that Appellants could search every megabyte of data on each device" is an unhelpful exaggeration of the actual facts. In truth, although appellants suggested use of a private ESI retrieval company, they, themselves, were never seeking anything other than public documents and had no interest in reviewing or otherwise compromising the private information of the Respondents. That said, appellants' assertion that they simply sought

---

[14] Although not essential to our decision in this matter, it is interesting to note that, as part of the discovery process in Bertoli's civil suit, Rouda finally did make a number of very specific and focused requests for City emails in May 2012. As one example, he sought: "All EMAILS of (to, forwarded to, cc'd to, bcc'd to, and/or from) Susan ('Sue') Kelly REFERRING TO STREET SMART SEBASTOPOL." In its July 23, 2012, response, the City indicated its intention to comply with Rouda's requests and produce the relevant emails, which, according to Rouda, it did via flash drive and CD the next day. The City's response to Rouda's document request is before this court pursuant to appellants' motion for judicial notice filed on July 30, 2012. On August 1, 2012, we denied the request as to Exhibit 18 and granted the request as to Exhibits 19 and 20 "with no present determination of relevance." We find Exhibit 19 irrelevant and therefore disregard it. We find the City's response to Rouda's document request (Exhibit 20) relevant and consider it to the extent set forth herein.

24

some "City pedestrian project related emails by City employees" also seriously misstates the scope and burden of the Petition. In fact, appellants' Petition was onerous and clearly implicated the privacy rights of the many individual Respondents. However, given the current state of the law in this area, it was not entirely frivolous to take the position that public documents responsive to a PRA request could exist on private electronic devices.

In fact, an email message which both relates to the conduct of the public's business and is written and retained by an agency employee on his/her personal computer or cell phone is arguably a "writing" that is "prepared, owned, used, or retained" by a local agency. Thus, under a plain reading of the PRA, it is a public record subject to disclosure. (§ 6252, subds. (e) & (g).) Although it can be argued that an individual employee is not a "local agency" as defined by the PRA, it is equally plausible that an employee acting on behalf of a local agency should be treated as indistinguishable from that agency for PRA purposes. Indeed, as discussed above, it appears beyond dispute that the emails of City employees located on *public* computers constitute public records under the PRA. (Compare *Tracy Press, supra*, 164 Cal.App.4th at p. 1300 [noting that if a member of the city council had emailed from city offices discussing city business, "it is undeniable that the records would be 'public records' that must be produced"].) To permit a different rule simply because the employee is conducting public business from his/her home computer would allow a public agency to shield its public documents from disclosure simply by instructing its employees to use their private email accounts. (See *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 291 ["[w]e consider it unlikely the Legislature intended to render documents confidential [and therefore not subject to PRA disclosure] based on their location, rather than their content"]; see also § 6254.9, subd. (d) ["[n]othing in this section is intended to affect the public record status of information merely because it is stored in a computer"]; but see § 6253, subd. (c) [implying disclosable public records must be "in the possession of the agency"; *Board of Pilot Commissioners v. Superior Court* (2013) 218 Cal.App.4th 577, 597-600 [discussing requirement that public records be in the "possession" of the agency] (*Pilot Commissioners*).)

25

Moreover, private computer access under the PRA is clearly an evolving area of the law about which reasonable attorneys could hold differing opinions. In reality, courts throughout the country are struggling with the weighty issues raised by the use of emerging and rapidly changing technologies in the conduct of the public's business. (See, e.g., *City of Champaign v. Madigan* (2013) 2013 IL App (4th) 120662 [concluding that text messages and emails sent or received by a city council member during council meetings were public records under Illinois's Freedom of Information Act]; *In re Silberstein* (Pa.Commw.Ct. 2011) 11 A.3d 629 [holding electronic communications between citizens and commissioners on a township board were not public records under Pennsylvania's Right-to-Know Law]; *Howell Education Assn., MEA/NEA v. Howell Bd. of Education* (2010) 287 Mich. App. 228, 235 [holding under Michigan's Freedom of Information Act that personal emails involving union matters retained on an agency computer system are not subject to disclosure unless used "in the performance of an official function"].) In fact, the very issue involved in this case is currently the basis for a petition for review in our own Supreme Court; persuasive evidence that this is an area of the law which remains in flux. (See *City of San Jose v. Superior Court* (2014) 225 Cal.App.4th 75, review granted June 25, 2014, S218066 [noting in the case summary that the question presented is as follows: "Are written communications pertaining to city business, including email and text messages, which (a) are sent or received by public officials and employees on their private electronic devices using their private accounts, (b) are not stored on city servers, and (c) are not directly accessible by the city, 'public records' within the meaning of the California Public Records Act?"].) That several amici curiae have filed briefs supporting appellants' position also buttresses our conclusion that not all reasonable attorneys would agree that the Petition was entirely without merit. (*Tracy Press, supra*, 164 Cal.App.4th at p. 1302 [noting, in its refusal to find a PRA request clearly frivolous under section 6259, subdivision (d), that "the participation of amici curiae attests to the importance of the issue" raised by the request].)

Of course, whatever the underlying merits of appellants' position with respect to the private electronics of City officials and employees, the Petition in this case was

26

clearly overbroad with respect to the number of individual Respondents named. Moreover, such overbreadth cannot be forgiven, as appellants suggest, merely by reliance on *Tracy Press*. In that case, a newspaper sought emails related to public business, but sent by a city council member (Tucker) from her personal computer through her private email account. (*Tracy Press*, *supra*, 164 Cal.App.4th at p. 1294.) The trial court concluded that Tucker was not a "local agency" for PRA purposes and thus her private emails were not "public records" subject to disclosure. (*Ibid*.) In a holding which highlights the practical problems associated with characterizing as "public" documents located on private electronic devices that are not in the possession of a public agency, the appellate court dismissed the case because Tucker was not named as a party. (*Id*. at p. 1295.) Specifically, the court concluded that any order giving access to her personal writings would necessarily affect Tucker's rights such that she was an indispensable party under section 389 of the Code of Civil Procedure. (*Id*. at pp. 1297-1302.) According to appellants, they were required to name all of the individual Respondents in this case or risk dismissal under *Tracy Press* if responsive ESI was located on the personal electronic devices of those individuals. Moreover, appellants claim that they could not be more precise because the City had failed to provide them with any information about the location of potentially responsive ESI, despite numerous requests by Rouda.

Appellants' arguments, however, are insufficient to justify their failure to focus their efforts to obtain responsive ESI under the Petition, especially in light of the fact that they were aware as early as 2009, after a PRA request to Caltrans, that Sue Kelly, the City's Engineering Director, was the "hub of the wheel" for the projects they were interested in and therefore most likely to have responsive ESI. However, similar to our previous analysis of undue burden, the mere fact that the Petition was impermissibly overbroad and therefore properly rejected by the trial court does not necessarily mean that it was entirely without merit. Rather, as stated above, it is an open issue whether and to what extent public records may be obtained from private computers under the PRA. Further, there was evidence that several current employees had responsive documents that were not disclosed and that certain city council members, at least, used their home

27

computers for City-related business. Thus, despite the overbreadth of the Petition, it was not, on that basis, clearly frivolous.[15]

The First District recently acknowledged the unique and fact-specific nature of actions under the PRA, stating that the extent of the PRA's coverage " 'is a matter to be developed by the courts on a case-by-case basis. [Citation.]' " (*Pilot Commissioners*, *supra*, 218 Cal.App.4th at p. 588.) In fact, " '[t]his decision-making process is an unavoidable consequence resulting from "the 'myriad organizational arrangements' adopted 'for getting the business of the government done.' " ' " (*Ibid.*) It follows, then, that " 'each arrangement must be examined in its own context.' " (*Ibid.*; see also *ACLU*, *supra*, 32 Cal.3d at p. 454, fn. 14 [noting that its holding under section 6255 is "necessarily limited to the facts of this particular case" and that different facts might lead to a different result].) Where, as here, the resolution of the matter rests on the careful balancing of multiple fact-specific considerations (and given the breadth of a public agency's disclosure obligations under the PRA), drafting a petition that is *entirely*

---

[15] Respondents make much of appellants' prayer for relief in the Petition, arguing that it is strong evidence in support of the court's determination of clear frivolousness. In their prayer, appellants requested an order allowing "a neutral third party ESI collection company such as TERIS access to copy Respondents' electronic storage devices *inside and outside of City of Sebastopol department offices where city business related ESI is or may be stored*" and also asked for "such other and further relief as the court may deem proper" (italics added). Once Respondents filed their declarations in response to the Petition indicating that no responsive ESI was located on any of their private electronic devices or on many of the City's municipal computers, the trial court could have issued a limited order, consistent with the prayer, that allowed a search of the few municipal computers where responsive ESI "is or may be stored," either by the City, itself, or by a neutral third party. Thus, we do not find the prayer dispositive. Further, contrary to Respondents' assertion and the trial court's apparent belief, it is not at all clear that, pursuant to the plain language of section 6258, appellants were required to serve the Request on all of the individual Respondents prior to filing the Petition. Rather, appellants could have assumed in their initial Request that the City would coordinate the retrieval of any public documents from individual City officials and employees. The naming of the individual Respondents only became an issue when this did not occur. Of course, the reasonableness of such an assumption depends on the scope of the City's obligation to produce responsive emails or other ESI not in its direct custody or control, an unresolved issue as described above.

without merit may actually be difficult to do.  Indeed, this may be one reason why only one published appellate opinion has ever affirmed an award of attorneys fees and costs to a public agency based on a finding of clear frivolousness under subdivision (d) of section 6259.[16]

### III.  DISPOSITION

The judgment is reversed to the extent it orders appellants to pay attorneys fees and costs pursuant to section 6259, subdivision (d).   Appellants' appeal from the post-judgment order determining the amount of attorney fees and costs in *Bertoli et al. v. City of Sebastopol et al.* (A134799), which includes Respondents' cross-appeal, is dismissed. In the interests of justice, each party shall bear its own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

---

[16] In *Butt*, *supra*, 44 Cal.App.4th 925, the First District affirmed an award of attorneys fees and costs in the amount of $3,991 pursuant to subdivision (d) of section 6259 based on a finding of clear frivolousness.  (*Id.* at pp. 929, 932.)  However, there is no discussion of the frivolousness issue in the published portion of the opinion.  (*Id.* at p. 931.)

_____
REARDON, J.


We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.


_Bertoli v. City of Sebastopol_ A132916

30

Trial Court:                          Sonoma County Superior Court

Trial Judge:                        Hon. Mark Tansil

Counsel for Appellant:          David Rouda

Counsel for Respondents:      Geary, Shea, O'Donnell, Grattan & Mitchell
Matthew K. Good
Steven C. Mitchell

*Bertoli v. City of Sebastopol* A132916

31