Filed 7/25/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NATIONAL CONFERENCE OF BLACK MAYORS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CHICO COMMUNITY PUBLISHING, INC., <br><br> Defendant and Appellant; <br><br> CITY OF SACRAMENTO et al., <br><br> Defendants and Respondents. | C083956 <br><br> (Super. Ct. No. 34201580002124) |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Affirmed.

Davis Wright Tremaine LLP, Thomas R. Burke, Rochelle L. Wilcox, and Dan Laidman for Defendant and Appellant Chico Community Publishing, Inc.

1

Katie Townsend, Bruce D. Brown, Caitlin Vogus and Michael Shapiro for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Defendant and Appellant Chico Community Publishing, Inc.

Ballard Spahr LLP, Peter L. Haviland and Scott S. Humphreys for Plaintiffs and Respondents National Conference of Black Mayors et al.

Matthew Ruyak and Andrea M. Velasquez for Defendants and Respondents City of Sacramento.

Patrick Whitnell, Corrine L. Manning, Alison E. Leary for League of California Cities, California State Association of Counties, and California Special Districts Association as Amici Curiae on behalf of Defendants and Respondents City of Sacramento.

A requester of public records who successfully litigates against a public agency for disclosure of those records is entitled to reasonable attorney fees under the California Public Records Act[1] (the Act). This case asks us to determine whether the Act also allows for an award of attorney fees to a requester when the requester litigates against an officer of a public agency in a mandamus action the officer initiated to keep the public agency from disclosing records it agreed to disclose.[2] We conclude the answer is no. The Act limits the award of attorney fees to plaintiffs who prevail after "seeking a judicial determination of a public agency's obligation to disclose records in the event the agency denies a request by a member of the public." (*Filarsky v. Superior* Court (2002) 28 Cal.4th 419, 423, 426 (*Filarsky*); § 6259.) A mandamus action seeking to prevent disclosure of public records does not arise under the Act nor does it seek to achieve the

---

[1]    Government Code section 6250 et seq. Further section references are to the Government Code unless otherwise indicated.

[2]    A mandamus action initiated by an interested party designed to prevent disclosure of public records falling under an exemption to the disclosure requirements provided in the Act is commonly referred to as a reverse-CPRA action. (*Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1264-1265 (*Marken*).)

2

purposes of the Act -- to compel a *public agency* to disclose records it refuses but is obligated to disclose. Accordingly, a requester of public records is not entitled to attorney fees under the Act after successfully litigating against a party attempting to prevent a public agency from disclosing the public records requested.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, the Sacramento News and Review (the newspaper), published by appellant Chico Community Publishing, Inc., investigated Sacramento's then Mayor Kevin Johnson and his staff's use of city resources in the take over and eventual bankruptcy of the National Conference of Black Mayors (the National Conference). As part of that investigation, the newspaper made a request to the City of Sacramento (the City) pursuant to the Act for e-mails in the City's possession that were sent from private e-mail accounts associated with Johnson's office. The City disclosed approximately 900 pages of records responsive to the request. In the City's review of the records on its servers, however, it identified communications between Johnson's office and the law firm Ballard Spahr LLP (the law firm), which represented the National Conference in its bankruptcy proceedings and Johnson, along with the National Conference, in litigation connected with Johnson's contested election as the National Conference's president. The City flagged these e-mails as potentially containing attorney-client privileged information. It then contacted the law firm to notify it that the City would "have no choice but to release these emails absent a court order stating otherwise" because the City had no authority to assert attorney-client privilege over the records on behalf of outside counsel.

The law firm then contacted the newspaper and asked it to agree the City could withhold any records it determined included attorney-client communications. The newspaper refused and contacted the City, which admitted telling the law firm "that some of the emails the City Attorney planned to release to [the newspaper] included attorney-client communication between the Mayor's office and [the law firm]." The City also

3

confirmed to the newspaper that it "suggested" the law firm contact the newspaper to see if the newspaper would "agree the emails should be withheld." The City further told the newspaper it had "identified 'about 96' emails that contained information that -- if it had been communication between City Attorney staff and mayor's staff -- [it] would have withheld because of attorney-client privilege. But since it didn't involve the City Attorney, . . . the [C]ity couldn't withhold the emails. 'As far as [it was] concerned, they are public records' " the City told the newspaper.

Following the newspaper's refusal to allow the City to withhold e-mails containing attorney-client communications, the National Conference, Johnson in his official capacity as the former president of the National Conference, and Edwin K. Palmer in his official capacity as Chapter 7 Trustee for the National Conference (collectively petitioners) filed a verified petition for peremptory writ of mandate against the City and its City Attorney's Office pursuant to Code of Civil Procedure section 1085 to prevent disclosure of records to the newspaper. Petitioners also named the newspaper as a respondent in the action. Petitioners sought to keep e-mails between Johnson's office and the law firm from disclosure arguing the e-mails constituted privileged attorney-client communications and attorney work product; however, petitioners had not seen any of the records the City planned to disclose before initiating their action. The City did not oppose petitioners' writ petition; however, the newspaper did.

The parties stipulated that the City would give the law firm copies of the records it identified as potentially privileged so that the law firm could create a privilege log. After reviewing the records, the law firm determined "several hundred" of the records were not privileged and the City produced those records to the newspaper. The law firm also created a privilege log identifying 158 records as being privileged. Following a meet and confer period, the law firm agreed to produce 13 of the challenged records, and the newspaper agreed to withdraw its challenge to 32 of them -- leaving 113 records, which

4

petitioners requested be reviewed in camera after failing to make a prima facie showing of privilege. Following an in camera review, the trial court ordered disclosure of 58 e-mails in full and 17 with redaction. It also ruled that 38 e-mails were privileged and did not need to be disclosed.

Based on these findings, the newspaper moved for attorney fees under the Act (§ 6259, subd. (d)) from Johnson for using his status as a public official to oppose the newspaper's request for public documents. The newspaper also moved for attorney fees under the private Attorney General statute (Code Civ. Proc. § 1021.5) from "each of the [p]etitioners" because it successfully secured important public rights. The trial court denied both of those motions.

As is relevant to the newspaper's motion pursuant to the Act, the trial court doubted but assumed the newspaper could recover attorney fees if it showed it was the functional equivalent of a prevailing plaintiff in an action brought pursuant to the Act under the reasoning of *Fontana Police Dept. v. Villegas-Banuelos* (1999) 74 Cal.App.4th 1249, 1252-1253. The trial court found the newspaper could not make this showing because it was not a prevailing plaintiff, the legal proceeding was not the functional equivalent of an action under the Act, and the newspaper was not seeking attorney fees from a public agency. The court explained that the Act provides requesters of public records with a cause of action to compel a public agency to disclose those public records. Here, although the newspaper advocated for disclosure because the City did not oppose petitioners' writ petition, the City was prepared to disclose the requested records before litigation commenced. Because the City intended to disclose the requested records, the newspaper did not act like the type of plaintiff contemplated by the Act (i.e. one seeking disclosure of public records the public agency refuses to disclose) and was not entitled to attorney fees.

Further, the newspaper did not request attorney fees from a public agency and instead requested attorney fees from Johnson under the theory that he acted as a public

5

official of the public agency when he petitioned to prevent disclosure of the requested public records. The court found this contention without merit for two reasons: (1) Johnson could have only brought his petition as the president of the National Conference because his argument that the records should not be disclosed rested on the privilege he, as the president of the National Conference, claimed to have over the records, whereas Johnson as the Mayor of the City had no claim of privilege over the records; and (2) the newspaper presented no evidence showing Johnson acted in his capacity as a public official when attempting to prevent disclosure of the requested records. The newspaper appeals this decision. [3]

DISCUSSION

I

*Legal Background*

"The California Legislature in 1968, recognizing that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state' [citation], enacted the California Public Records Act, which grants access to public records held by state and local agencies." (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66-67.) "As the result of an initiative adopted by the voters in 2004, this principle is now enshrined in the state Constitution: 'The people have the right of access to information concerning the conduct of the people's business, and therefore, . . . the writings of public officials and agencies shall be open to public scrutiny.' (Cal. Const., art. I, § 3, subd. (b)(1).)" (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329.)

---

[3]     We emphasize that the newspaper does *not appeal* the trial court's denial of its motion for attorney fees under the private Attorney General statute. (Code Civ. Proc., § 1021.5.)

6

The Act's purpose is to increase freedom of information by providing public access to information in the possession of public agencies. (*Filarsky*, *supra*, 28 Cal.4th at p. 425; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370; *County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 63.) To implement this policy, section 6253, subdivision (a) provides all persons with the right to inspect any public record maintained by state or local agencies, subject to various enumerated exemptions. (*Long Beach Police Officers Assn. v. City of Long Beach*, *supra*, 59 Cal.4th at pp. 66-67; *County of Los Angeles*, at p. 63.) The Act "broadly defines ' "[p]ublic records" ' as including 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency. . . .' (Gov. Code, § 6252, subd. (e).)" (*Long Beach Police Officers Assn.*, at p. 67.)

The Act embodies a strong policy in favor of disclosure. (*Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045.) Our state Constitution mandates the Act be construed broadly in favor of the people's right of access. (Cal. Const., art. I, § 3, subd. (b)(2); *County of Los Angeles v. Superior Court*, *supra*, 211 Cal.App.4th at p. 63.) The people's right of access, however, is not absolute. (*Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1254.) The Act contains over two dozen express exemptions. (§ 6254; *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court*, *supra*, 42 Cal.4th at p. 329.) Subdivision (k) of section 6254 provides an exemption for "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." Pursuant to this subdivision, documents protected by the attorney-client privilege are not subject to disclosure. (*County of Los Angeles*, *supra*, at p. 64; *Roberts v. City of Palmdale*, *supra*, 5 Cal.4th at p. 370 ["[b]y its reference to the privileges contained in the Evidence Code . . . the Public Records Act has made the attorney-client privilege applicable to public records"]; *Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 527 ["[t]he

7

Public Records Act does not require the disclosure of a document that is subject to the attorney-client privilege"].)

These statutory exemptions from mandatory disclosure under the Act must be narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(2).) Moreover, the exemptions are permissive, not mandatory -- they allow nondisclosure but do not prohibit disclosure. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 652; *Register Div. of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 905.) Indeed, after listing the exemptions, section 6254 provides: "This section does not prevent any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law." (See also § 6253, subd. (e) ["[e]xcept as otherwise prohibited by law, a state or local agency may adopt requirements for itself that allow for faster, more efficient, or greater access to records than prescribed by the minimum standards set forth in this chapter"].)

When the public agency that holds the records refuses to disclose a requested public document, the Act provides that "[a]ny person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter." (§ 6258; *Filarsky*, *supra*, 28 Cal.4th at p. 426.) Section 6259 provides the superior court with the procedure for determining whether the public agency is unlawfully withholding public records. (*Filarsky*, at p. 426.) If, at the end of this process, the superior court determines the public agency or public official should have disclosed the requested documents "[t]he court shall award court costs and reasonable attorney fees to the plaintiff . . . ." (§ 6259, subd. (d).)

If, on the other hand, the public agency intends to disclose a public record that could infringe upon an interested party's rights, the Act provides no mechanism for that third-party to prevent the public agency from disclosing those records. Recognizing this omission in the Act, the court in *Marken*, *supra*, 202 Cal.App.4th at pages 1266-1267,

8

identified the mechanism for an interested party to prevent a public agency from disclosing records that fall within an exemption to the disclosure requirements. In *Marken*, a teacher filed a petition for writ of mandate against a school district seeking to prevent the district from disclosing records from his personnel file in response to a parent's request under the Act. (*Marken*, at pp. 1256-1257.) The teacher alleged by verified complaint that the district's decision to disclose the records was not authorized by the Act because disclosure would violate his (the teacher's) right to privacy. (*Id.* at p. 1257; see § 6254, subd. (c).) In concluding this was the proper procedure for an interested party to enjoin a public agency from disclosing records, the *Marken* court also acknowledged that the requester of the records has an interest in the outcome of the litigation and is properly joined as a real party in interest. (*Marken*, at p. 1268.)

With these principles in mind, we now turn to the question of whether a requester of public documents who, in the absence of public agency opposition, opposed the writ petition of a person seeking to enjoin the public agency from disclosing public records is entitled to attorney fees under the Act. While we usually review an award of attorney fees and costs for abuse of discretion (*Crews v. Willows Unified School Dist.* (2013) 217 Cal.App.4th 1368, 1379), we review de novo questions of statutory construction that define the criteria for an award of attorney fees (*ibid.*; *Bertoli v. City of Sebastopol* (2015) 233 Cal.App.4th 353, 365).

## II

### *The Attorney Fee Provision In The Act Does Not Apply To*
### *Mandamus Proceedings Seeking To Prevent Disclosure Of Public Records*

As it pertains to attorney fees, "California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278.) However, attorney fees are recoverable as costs by a prevailing party when authorized by contract, statute, or law. (Code Civ. Proc., § 1033.5, subd. (a)(10).) The Act contains one such fee-shifting

9

statute. It provides: "The court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section. The costs and fees shall be paid by the public agency of which the public official is a member or employee and shall not become a personal liability of the public official. If the court finds that the plaintiff's case is clearly frivolous, it shall award court costs and reasonable attorney fees to the public agency." (§ 6259, subd. (d).) As explained, litigation pursuant to the Act seeks "a judicial determination of a public agency's obligation to disclose records in the event the agency denied a request by a member of the public." (*Filarsky*, *supra*, 28 Cal.4th at p. 426; § 6259.)

"The very purpose of the attorney fees provision [in the Act] is to provide protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Law Offices of Marc Grossman v. Victor Elementary School Dist.* (2015) 238 Cal.App.4th 1010, 1013.) The incentive is that a plaintiff will receive an award of costs and reasonable attorney fees from a public agency upon prevailing and will not be liable for the public agency's costs and reasonable attorney fees unless the action is frivolous. (*Filarsky*, *supra*, 28 Cal.4th at p. 427.)

The language of the attorney fee provision in the Act explicitly limits an attorney fee award to a plaintiff who prevails "in litigation filed pursuant to [section 6259]." (§ 6259, subd. (d).) Relying on *Fontana*, the newspaper would have us ignore this explicit language and instead conclude it is entitled to attorney fees under the Act because it prevailed in achieving the purpose of the Act -- disclosure of public records following litigation against a public official seeking to keep the records from disclosure. We disagree.

In *Fontana*, the court interpreted the attorney fee provision in the Act to find a requester of public documents entitled to attorney fees despite not being a plaintiff and

10

not initiating litigation under the Act. In that case, the public agency filed for a protective order to keep records from disclosure after the requester expressed the intent to initiate litigation. (*Fontana Police Dept. v. Villegas-Banuelos*, *supra*, 74 Cal.App.4th at p. 1251.) The trial court found the records did not contain privileged information and were subject to disclosure but denied the requester attorney fees. (*Ibid.*) In reversing, the appellate court held that "[b]ecause the proceeding in this case was the functional equivalent of a proceeding to compel production of the [records] under the [Act] and [the requester] was the prevailing party in the proceeding, he is entitled to recover attorney's fees despite the fact that he was not denominated 'plaintiff' in the action." (*Id.* at p. 1253.) In so holding, the court reasoned that if "only the party who initiates the proceeding with respect to disclosure may recover attorney's fees and costs, then public agencies could defeat recovery of fees in every instance by doing exactly what [the public agency] did in this case -- beating the party seeking disclosure to the courthouse and filing a petition for a protective order." (*Ibid.*)

The newspaper argues *Fontana* is binding authority, and we must apply the " 'functional equivalent' " test to this case. Not so. Our Supreme Court's subsequent decision in *Filarsky* eroded the holding of *Fontana* and clarified when a cause of action under the Act arises and who could bring that action.

In *Filarsky*, an attorney sought records related to a public agency's hiring of a police captain. The public agency initially denied the attorney's request and then, in response to a letter threatening litigation pursuant to the Act, disclosed a small portion of the records requested and on the same day filed a complaint for declaratory relief pursuant to Code of Civil Procedure section 1600 to obtain " 'a judicial determination of its rights and duties under [the Act].' " (*Filarsky*, *supra*, 28 Cal.4th at p. 424.) Our

11

Supreme Court held that a public agency may not do this. Citing the Act, the *Filarsky* court noted that " 'every person' " has the right to inspect public records. (*Id.* at p. 426, citing § 6250.) If the agency in possession of the records determines the records fall under a disclosure exemption, then the agency must tell the requester of that determination. (*Filarsky*, at p. 426; § 6253, subd. (c).) Only then can an action under the Act be brought. "The Act sets forth specific procedures for seeking a judicial determination of a public agency's obligation to disclose records *in the event the agency denies a request by a member of the public*." (*Filarsky*, at p. 426, italics added.) The Act provides the "exclusive procedure" for determining whether a document must be disclosed as between a requester of public records and the public agency in possession of those records. That procedure is for the person seeking disclosure to commence a declaratory relief proceeding pursuant to sections 6258 and 6259. (*Filarsky*, at pp. 423, 426-427.)

Nothing about the "functional equivalent" rule announced in *Fontana* survived the holding in *Filarsky*. By clarifying sections 6258 and 6259 provide the "exclusive procedure" for bringing an action under the Act, the *Filarsky* court held that no "functional equivalent" of an action under the Act could exist, let alone a fee award from such an action.[4] The Act is only implicated once a public agency denies a public records request and only then may that requester bring an action under the Act. (*Filarsky*, *supra*,

---

[4]    Indeed, when recognizing mandamus proceedings as an appropriate avenue for interested parties to prevent disclosure of public documents, the *Marken* court assumed the requester, although an interested party, would not be entitled to attorney fees for efforts spent in opposing the mandamus petition. (*Marken*, *supra*, 202 Cal.App.4th at p. 1268; accord *Pasadena Police Officers Assn. et al. v. City of Pasadena* (2018) 22 Cal.App.4th 147, 155, fn. 7.)

12

28 Cal.4th at p. 426.) Here, the City did not withhold public records from the newspaper, thus the newspaper could not initiate litigation under the exclusive procedure provided in the Act. (§§ 6258, 6259.) Because the newspaper did not bring an action under sections 6258 and 6259 against the City to compel disclosure of public records, it is not entitled to attorney fees under those provisions.

The newspaper urges us not to reach this conclusion by citing to the constitutional provision that the Act be read broadly in favor of public disclosure and to cases purportedly construing the Act beyond the confines announced in *Filarsky*. First, the newspaper cites *Law Offices of Marc Grossman v. Victor Elementary School Dist.*, *supra*, 238 Cal.App.4th at page 1010, in support of its point that to deny fees in this case would " 'elevate form over substance' " and run contrary to the Act's goal of public disclosure. There, an attorney filed an action under the Act in the name of his law firm. (*Id.* at p. 1012.) Even though the attorney prevailed in subsequent litigation under the Act, the trial court denied him attorney fees. (*Id.* at pp. 1012-1013.) The trial court reasoned that because the attorney named his firm as the petitioner, his fees did not relate to consideration for which a litigant was liable. (*Id.* at pp. 1013-1014.) When reversing, the appellate court stated that reading the attorney's petition to find the attorney did not represent a client and brought the action completely on his own behalf "elevate[d] form over substance" of the petition. The court concluded the attorney was entitled to fees because he prevailed under the Act. (*Id.* at pp. 1014, 1015.) The appellate court did not interpret the Act or its attorney fee provision, let alone construe it beyond the rule announced in *Filarsky*. (*Law Offices of Marc Grossman*, at p. 1014.) Thus, the newspaper's reliance on this case is misplaced.

The newspaper's reliance on *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, is similarly misplaced. The newspaper cites to this case as an example of when our

Supreme "Court rejected an overly technical interpretation of the [Act], such as the one adopted by the trial court." In *City of San Jose*, a requester sought documents "includ[ing] emails and text messages 'sent or received on private electronic devices used by' the mayor, two city council members, and their staff." (*Id.* at p. 615.) The court held city employees' private voicemails, e-mails, and text messages relating to public business are subject to disclosure under the Act if the contents otherwise meet the definition of a public record. (*Id.* at p. 623.) The *City of San Jose* court thus rejected an interpretation that "would allow evasion of [the Act] simply by the use of a personal account." (*Id.* at p. 625.)

In so holding, our Supreme Court recognized that documents do not lose their status as public records simply because " 'the official who possesses them takes them out the door.' " (*City of San Jose v. Superior Court*, *supra*, 2 Cal.5th at p. 623.) "The rationale behind the Act is that it is for the *public* to make [the] determination [that the government is working in its best interest], based on information to which it is entitled under the law. . . . The whole purpose of [the Act] is to ensure transparency in government activities. If public officials could evade the law simply by clicking into a different e-mail account, or communicating through a personal device, sensitive information could routinely evade public scrutiny." (*Id.* at p. 625.) Thus, as the Constitution provides, the Act was interpreted broadly to achieve the aim of public access to public records.

The goal of achieving access to public records is not adversely affected by our conclusion in this case. As the *Filarsky* court noted, the Act, like its federal equivalent Freedom of Information Act, "expressly provides only for a cause of action to compel disclosure, not an action to prohibit disclosure." (*Marken*, *supra*, 202 Cal.App.4th at

14

pp. 1264-1265, citing *Filarsky*, *supra*, 28 Cal.4th at p. 431.) Here, and under any action initiated by an interested party seeking to prevent disclosure, the public agency has already agreed to disclose public records to a member of the public who requested them. (*Marken*, at pp. 1265-1266.) These records would presumably include the public records defined in *City of San Jose*, and in fact did include those type of records here. The Act is simply not implicated in this type of proceeding because the public agency complied with the purpose of the Act by providing public access to public records and need not be compelled to do so.[5]

It was this reasoning that led the *Marken* court to recognize an interested party's right to bring a mandamus action preventing disclosure of records. This type of action, like an action brought by a requester under the Act, "seeks judicial review of an agency decision under the [Act]." (*Marken*, *supra*, 202 Cal.App.4th at p. 1265.) The only difference is that in the case of a mandamus proceeding initiated by an interested party, the public agency decided to disclose the records. Without mandamus, an interested party would have no avenue to review an agency's decision to disclose a record that may be exempted from disclosure under the Act. (*Id.* at p. 1266.)

Further, the *Marken* court found a records requester's procedural protections under the Act are not impaired by this type of mandamus proceeding. (*Marken*, *supra*, 202 Cal.App.4th at pp. 1267-1268.) In particular, it found requesters maintain the ability to avoid litigation, as they do under the Act, because the requester can rely on the public

---

[5] The Reporters Committee for Freedom of the Press along with 14 media organizations filed an amicus brief arguing the mandamus proceeding recognized in *Marken* is contrary to California law. We do not address this argument because it was not raised by the parties either at trial or on appeal.

agency to assert the requester's right to disclosure of the public document. Thus, the *Marken* court reasoned, it was of no consequence that a requester would not be entitled to attorney fees in such a proceeding because the requester's involvement would be purely voluntary. (*Id.* at p. 1268.)

The newspaper takes issue with the *Marken* court's findings in this regard because it (the newspaper) could not rely on the City to assert its right to public disclosure since the City did not oppose Johnson's petition seeking to prevent disclosure of the requested e-mails. This fact is even more problematic, the newspaper argues, considering it was an officer of the City who sought to prevent disclosure, equating this legal proceeding to a public officer withholding access to public records. As will be discussed, we do not find the City's failure to oppose the petition or the fact that an officer of the public agency initiated the proceedings material to the question of whether the newspaper is entitled to attorney fees under the Act.

First, the City was not required to oppose Johnson's petition and advocate for disclosure of the requested e-mails. In the City's review of requested public records, it came across records that it determined were public but potentially fell under the attorney-client privilege exemption in the Act. The City, however, was not the attorney or the client in those communications, thus it could not assert the privilege that exempted the records from disclosure. (Evid. Code, § 954 ["the client, whether or not a party, has a privilege . . . to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by: [¶] (a) The holder of the privilege; [¶] (b) A person who is authorized to claim the privilege by the holder of the privilege;

16

or [¶] (c) The person who was the lawyer at the time of the confidential communication . . . ."].) The City's determination that it must disclose the requested e-mails was a determination of its own responsibilities under the Act, not a determination of an interested party's ability to keep the records from disclosure.[6] This is especially true given the exemption at issue -- attorney-client privilege -- which can only be asserted by the holder of the privilege, which in this case was not the public agency.

Second, Johnson is entitled to challenge the public agency's decision to disclose records without morphing the proceeding into one under the Act. The newspaper argues that because the communications at issue involved Johnson in his capacity as mayor, his attempt to prevent the e-mails from disclosure equated to a public officer withholding public records from a member of the public who requested them. Again, we disagree.

"[The Act] and the Constitution strike a careful balance between public access and personal privacy." (*City of San Jose v. Superior Court*, *supra*, 2 Cal.5th at p. 616.) "When enacting [the Act], the Legislature was mindful of the right to privacy (§ 6250), and set out multiple exemptions designed to protect that right. ([Citation]; see § 6254.) Similarly, while the Constitution provides for public access, it does not supersede or modify existing privacy rights. (Cal. Const., art. I, § 3, subd. (b)(3).)" (*City of San Jose*, at pp. 615-616.) Although Johnson could only have been president of the National Conference because of his position as Mayor of Sacramento, these inter-related positions only contributed to the e-mails' classification as public records. (See *League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 986-987 [E-mails pertaining to legal work a city attorney did for the League of California Cities were

---

[6]     The exemptions to the Act do "not prevent any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law." (§ 6254.) The newspaper does not argue the City was prohibited by law from disclosing the requested e-mails.

17

public records because the attorney was a member of the League based solely on his role as the city's attorney and his acts were intended to further the interest of the city as well as the League].)

Another contributing factor, as the newspaper points out, was likely Johnson's use of city resources, including city time and staff, to conduct National Conference business. The inter-related positions, however, did not transform all of Johnson's actions with regard to the National Conference into actions of Johnson the public official. Johnson's claim of privilege over the e-mails stemmed from his position as the president of the National Conference and not from his position as mayor of the City. Johnson did not abandon his right to privacy or his right to assert the attorney-client privilege when he was elected mayor. (See *City of San Jose v. Superior Court*, *supra*, 2 Cal.5th at p. 626 [the proper course to take when requested records implicate a public official's or employee's privacy rights is to assign the records the status which their content mandates, and then assess privacy concerns raised in the public records on a case-by-case basis].)[7]

---

**7** The Reporters Committee for Freedom of the Press also argues in its amicus brief that our failure to apply the fee-shifting provisions in the Act to mandamus proceedings initiated by interested parties, especially public officials, will lead to an abuse of the mandamus proceeding by officials seeking to prevent disclosure of public records. This argument ignores the fact that a requester could get attorney fees under the private Attorney General statute (Code Civ. Proc., § 1021.5), which the newspaper sought in this case. (3 JA 607:17-24) (See *Pasadena Police Officers Association et al. v. City of Pasadena*, *supra*, 22 Cal.App.4th at p. 155, fn. 7.) Although the trial court did not award the newspaper attorney fees under this statute, it did so based on the merits and not because the fee-shifting statute was unavailable to the newspaper. Most importantly, newspaper does not appeal the trial court's decision to deny fees under the private attorney general statute.

Thus, contrary to the amici argument, a fee-shifting deterrent currently exists to prevent the abuse amici fears will result from our conclusion.

18

Accordingly, because the newspaper did not prevail in litigation it initiated under the exclusive procedure provided in the Act, it is not entitled to attorney fees under those provisions.[8]

DISPOSITION

The order denying attorney fees is affirmed.  In the interests of justice, the parties are to bear their own costs on appeal.  (Cal. Rule of Court, rule 8.278(a)(5).)


/s/_____
Robie, J.


We concur:


/s/_____
Hull, Acting P. J.


/s/_____
Hoch, J.

---

[8]     Because we have concluded the newspaper is not entitled to attorney fees under the Act, we need not consider its remaining arguments.