Filed 12/24/20

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RANDALL BURGESS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CORONADO UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent;<br><br>VOICE OF SAN DIEGO,<br><br>    Real Party in Interest and Appellant. | D076263<br><br><br>(Super. Ct. No. 37-2018-00035086-CU-WM-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge. Affirmed.

Law Office of Felix Tinkov and Felix M. Tinkov for Real Party in Interest and Appellant.

herronlaw and Matthew V. Herron for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

News outlet Voice of San Diego (Voice) requested records from the Coronado Unified School District (District) under the California Public Records Act (PRA; Gov. Code, § 6250 et seq.) concerning its employee Randall Burgess, who had been the subject of unsubstantiated molestation allegations.  Burgess sued the District to enjoin disclosure.  After Voice intervened in his lawsuit, the trial court ordered the District to disclose publicly available court filings and materials submitted to the District at a public hearing.  Thereafter, it denied Voice's request for attorney's fees pursuant to Code of Civil Procedure section 1021.5,[1] finding the production of these limited materials did not confer a significant public benefit.

Voice argues the trial court misconstrued the significant benefit requirement under section 1021.5 and abused its discretion in denying its fee request.  Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Voice made its first records request to the District in November 2017, seeking "[a]ll public records relating to any substantiated claims of sexual misbehavior and related misconduct for any employee, official, contractor, agent or volunteer of the District arising within the last 10 years."  As it later clarified, "substantiated claims" included yet-unproven complaints that appeared well founded.  Upon receiving this request, the District informed Burgess that it intended to produce certain responsive documents, which prompted Burgess to initiate this "reverse-PRA" petition for writ of mandate

_____

[1]     Unless otherwise specified, further statutory references are to the Code of Civil Procedure.

and request for injunctive relief to prevent their disclosure.[2] Voice filed a second records request in August 2018, seeking "[a]ll letters, emails, and other correspondence submitted to Coronado Unified School District with regard to Randall Burgess starting on January 1, 2017 through to the present," including "comments delivered to the school board by members of the public at one or more public hearings."

The parties appeared before Judge Judith Hayes in October 2018. Because Voice's request to intervene was unopposed, the court granted it. It then turned to Burgess's request for preliminary injunctive relief. The District submitted 27 pages of records under seal that it believed were responsive to Voice's first records request. Judge Hayes concluded that five of the pages did not "relate to allegations of a 'substantial nature' and enjoined their disclosure." But she reached a different result as to the remaining 22 pages, which consisted of publicly available filings in Burgess's separate lawsuit against the District seeking his reinstatement.[3] Accordingly, the District produced 22 pages consisting of Burgess's writ petition for reinstatement, the District's Answer, and extraneous notices contained in the case file. Judge Hayes did not make any rulings in reference to Voice's second records request, directing the parties to meet and confer

---

[2] "In a 'reverse-PRA' action, an interested party seeks a judicial ruling precluding a public agency from disclosing allegedly confidential documents pursuant to the California Public Records Act." (*Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 141, fn. 2 (*Carlsbad*); see generally *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1267 (*Marken*).)

[3] That case, in which Burgess unsuccessfully claimed his placement on administrative leave violated the Education Code and his collective bargaining rights, was the subject of a prior appeal. (*Burgess v. Coronado Unified School District* (Oct.1, 2018, D072976) [nonpub. opn.].)

over whether Burgess had to file a separate petition to enjoin production of any documents responsive to that request.

When Judge Hayes retired, the case was transferred to Judge Richard Whitney. In November 2018, Burgess filed an amended petition for writ of mandate to enjoin the District from disclosing documents responsive to Voice's second request. He once again sought a preliminary injunction.

Judge Whitney denied the request for injunctive relief in January 2019, reasoning that Burgess failed to show the requested documents concerned "complaints of a confidential nature." The documents discussed unproven allegations that Burgess had molested a student, but these allegations "were known to the public" and were what "prompted the District to put [Burgess] on leave and for the public to submit comments in support of or against [him]." Burgess had not shown that the records were or should have been part of his personnel file, and thus the documents would be ordered released. Accordingly, the District was ordered to release a second production to Voice consisting of a student complaint describing alleged molestation; two short status update letters from the Commission on Teacher Credentialing to the District, 74 pages of e-mails from parents that alternately praised or criticized Burgess, and a petition signed by 1,144 parents seeking Burgess's reinstatement. Before the District could send these documents to Voice, Burgess released them to another media outlet. Shortly thereafter, Burgess voluntarily dismissed the case.

In May, Voice filed a motion seeking $78,720 in attorney's fees pursuant to section 1021.5.[4] Voice claimed that it would be entitled to fees under the PRA had it sued the District (Gov. Code, § 6259, subd. (d)), and private attorney general act fees were therefore appropriate for its successful intervention in Burgess's reverse-PRA suit. According to Voice, it met the elements of section 1021.5 by prevailing in efforts to enforce an important public right.

Opposing Voice's motion, Burgess argued, among other things, that the District's opposition rendered Voice a "mere observer"; Judge Hayes enjoined disclosure of key documents responsive to the first records request; and the documents that were disclosed were "so lacking in substance" that Voice admitted as much in bringing its own PRA action against the District. Burgess lodged a copy of the separate writ petition and complaint Voice filed against the District.[5] In it Voice alleged the District "in total, disclosed a de minimis set of records including publicly available court filings made by

_____

[4] Section 1021.5 provides in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

[5] Exhibits that Burgess lodged are not included in the record on appeal. Because it was properly before the trial court and formed a basis for its fee ruling, we augment the record on our own motion with a copy of the verified petition for writ of mandate and complaint for declaratory and injunctive relief filed in *Voice of San Diego v. Coronado Unified School District* (Super. Ct. San Diego County, 2019, No. 37-2019-00012628-CU-WM-CTL). (Cal. Rules of Court, rule 8.155(a)(1)(A).)

Burgess in response to his suspension by the DISTRICT and public letter[s] and comments made to the DISTRICT relating to Burgess."

The court heard argument on the fee motion in June 2019. Responding to the court's tentative to deny the request, Voice noted that "any member of the public seeking records certainly has no idea of the content of the records they are seeking." Although many of the produced records turned out to be publicly available, Voice "couldn't know what those records were" when it intervened. Judge Hayes had prevented Voice from expanding the scope of litigation, which is what prompted the separate suit. By calling the production de minimis in its own pleading, Voice was referring to the *volume* of materials produced, not their substantive nature. The court took the matter under submission.

In a written order, the court later confirmed its tentative and denied Voice's motion. It reasoned that disclosure "was limited to public court filings and public letters and comments made to [the District]." Following both productions, Voice "sued the District and claimed the disclosure was 'de minimis,'" and the court agreed with this assessment. Voice "did not cause the District or [Burgess] to disclose any public records of any significance that was not already available to the public in some manner." Therefore, in the court's view, attorney's fees were not warranted.

DISCUSSION

Voice takes issue with the court's finding that its participation did not confer a significant public benefit. As we explain, the court properly construed the "significant benefit" requirement and did not abuse its discretion in finding this factor unmet.[6]

1.      *Legal Principles*

Section 1021.5 permits a trial court to award attorney's fees to a successful party in any action that "(1) enforced an important public right, (2) conferred a significant public benefit, and (3) is of a type that private enforcement was necessary, and the financial burden justifies subsidizing the successful party's attorneys." (*Carlsbad, supra,* 49 Cal.App.5th at p. 145, citing *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214, 1216–1217

---

[6]      Voice seeks judicial notice of the materials that were ordered produced, arguing it is required to "demonstrate the expansive set of materials recovered through the underlying litigation." Burgess opposes the request, maintaining the materials were not placed before the trial court with the fee motion. And without the records "at the center of this case," he claims we lack an adequate record to review the fee ruling on the merits. We reject Burgess's contentions and grant Voice's request for judicial notice. (See Evid. Code, §§ 452, subd. (d), 459.) As his order denying attorney's fees makes clear, Judge Whitney knew the scope of documents initially filed under seal and ordered produced. *He* ordered one production and is presumed to have been aware of the prior case history. (See *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1186, fn. 3 [presuming that the judge who took over the case after first judge's retirement "was familiar with the issues raised in the case and had sufficient expertise to evaluate the attorney fees request"].)

7

(*Whitley*).)[7] "Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited. [Citation.] Unless special circumstances would render an award of 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria are met." (*Carlsbad*, at p. 145.) A successful intervener seeking records disclosure in a reverse-PRA action is entitled to seek attorney's fees under section 1021.5. (*Ibid.*; *Pasadena Police Officers Association v. City of Pasadena* (2018) 22 Cal.App.5th 147, 164–166; *City of Los Angeles v. Metropolitan Water District of Southern California* (2019) 42 Cal.App.5th 290, 306.)

The trial court denied Voice's fee request because it did not find that the second eligibility criterion had been met. In its view, the documents that were ordered produced did not confer a significant public benefit. "On appeal from an award of attorney fees under section 1021.5, ' "the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026.)

2.    *The trial court applied the proper standard.*

Voice first contends that the trial court misconstrued the significant benefit requirement as a matter of law. It asserts that it conferred a significant public benefit by securing public access to government records

---

[7]    The final statutory factor listed in section 1021.5—whether the interest of justice disfavors fees being paid out of any recovery—is not relevant where a lawsuit produces no monetary recovery. (*Woodland Hills Residents Assn. v. City Council* (1979) 23 Cal.3d 917, 935 (*Woodland Hills*); see *Carlsbad, supra,* 49 Cal.App.5th at p. 145.)

that Burgess sought to shield.  But this argument conflates two statutory factors.  To meet the eligibility criteria, a litigant must show both that the action "has resulted in the enforcement of an important right affecting the public interest" *and* that it has conferred "a significant benefit, whether pecuniary or nonpecuniary . . . on the general public or a large class of persons."  (§ 1021.5; see *Whitley, supra,* 50 Cal.4th at p. 1214.)  We can accept that Voice vindicated an important public right in securing access to government records about potential teacher misconduct that Burgess sought to withhold.  But that does not answer the separate question whether the records thereby produced resulted in a *significant* public benefit.  Any other construction would render part of section 1021.5 superfluous, which we seek to avoid.  (See *Vanderpol v. Starr* (2011) 194 Cal.App.4th 385, 395.)

As a policy matter, Voice suggests that the significant benefit element under section 1021.5 must be expansively construed to curtail abusive reverse-PRA litigation.  Understanding this argument requires additional background.  In public records litigation, the PRA grants attorney's fees to a prevailing plaintiff; a prevailing agency receives fees only if the requester's case "is clearly frivolous."  (Gov. Code, § 6259, subd. (d).)  This fee-shifting aims to encourage members of the public to seek judicial enforcement of their rights to access public records.  (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427 (*Filarsky*).)  But attorney's fees under the PRA are unavailable to an intervener in a *reverse*-PRA suit.  (*Marken, supra,* 202 Cal.App.4th at p. 1268; *National Conference of Black Mayors v. Chico Community Publishing, Inc.* (2018) 25 Cal.App.5th 570, 583, 587.)  Instead, such an intervener is limited to seeking fees under section 1021.5 where it meets all eligibility criteria.  (See *Carlsbad, supra,* 49 Cal.App.5th at pp. 145−146.)

9

Against this backdrop, Voice criticizes *Marken* for importing the reverse-PRA procedure from federal law without addressing the fact that, in its view, federal law (unlike the PRA) permits a fee award in reverse-FOIA suits.[8] Voice further maintains that *Marken* unintentionally undermined the holding of *Filarsky* that public agencies may not file preemptive declaratory relief actions to determine their disclosure obligations under the PRA. (*Filarsky, supra,* 28 Cal.4th at p. 432.) By approving a nonstatutory reverse-PRA right of action, Voice believes *Marken* facilitates "lawsuits from straw men in the form of unions and public employees whose positions align with the agencies."[9] It urges us to remedy these perceived adverse effects by construing the significant benefit element of section 1021.5 expansively in the reverse-PRA context. Drawing from authorities finding a significant benefit when important statutory and constitutional rights are enforced in the public interest, it suggests that "as a general rule, the significant benefit element of [Code of Civil Procedure] section 1021.5 is met when a party prevails in securing the disclosure of public records."

---

[8] The Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.), is the federal counterpart to the PRA. (See *Filarsky, supra,* 28 Cal.4th at p. 425.) It permits a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." (28 U.S.C. § 552(a)(4)(E)(i).) In restating Voice's argument, we express no opinion as to its premise—i.e., whether FOIA in fact authorizes attorney's fees in a reverse-FOIA action.

[9] Whether an employee filing a reverse-PRA suit is acting as a "straw man" for a public agency is fact-dependent. There was no cooperation between Burgess and the District here to suggest that he initiated this reverse-PRA suit at the District's behest to prevent disclosure, in circumvention of *Filarsky, supra,* 28 Cal.4th at page 432.

10

It is certainly true that "the 'significant benefit' that will justify an attorney fee award need not represent a 'tangible' asset or a 'concrete' gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills, supra,* 23 Cal.3d at p. 939.) But that does not settle the matter:

> "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id.* at pp. 939−940.)

In other words, the significant benefit requirement of section 1021.5 requires more than a mere statutory violation. It would therefore go too far to construe this factor to authorize attorney's fees in every or nearly every reverse-PRA suit where the court orders some disclosure. Instead, a trial court must make a realistic assessment of the gains achieved in a reverse-PRA case, just as it would in any other matter. (*Woodland Hills, supra,* 23 Cal.3d at pp. 939−940.) To the extent Voice believes section 1021.5 should be broadened in the reverse-PRA context or thinks the PRA should itself authorize attorney's fees in reverse-PRA suits consistent with federal law, these contentions are properly addressed to the Legislature, not the courts. (See, e.g., *Williams v. Superior Court* (1993) 5 Cal.4th 337, 351−352 [courts

11

may not read FOIA language into the PRA that the PRA itself does not contain].)

3. *The trial court did not abuse its discretion in finding no substantial benefit.*

Turning to the record, Voice argues that the trial court abused its discretion in denying attorney's fees. It claims that records pertaining to alleged sexual misconduct "are inherently of significant benefit to the public" because they "reflect matters of substantial concern." It further asserts that the production of court filings and public comments aligns with the PRA's transparency goals. In evaluating whether the court erred in its factual determination, our standard is "deferential": we evaluate if there was a reasonable basis for the denial and reverse only if it " ' "exceeds the bounds of reason and results in a miscarriage of justice." ' " (*Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.App.5th 398, 420.) As we explain, the trial court reasonably found that Voice failed to secure a significant public benefit. (*Id.* at pp. 421–422 [no abuse of discretion where "the record supports the trial court's finding the [movant] failed to secure a significant benefit for the public"].)

Voice made two separate records requests. In response to the first, which sought records of employee sexual misconduct, the court ordered production of publicly available court filings connected to Burgess's writ petition seeking reinstatement. As Voice explained at the hearing on Burgess's preliminary injunction motion, its second request sought "public comments made at public hearings -- emails, correspondence, letters sent to a public agency by members of the public." Denying injunctive relief, the court ordered the District to produce letters and comments submitted by parents at a public hearing in October 2017. Although the original molestation claim was among these records, the court ordered its disclosure precisely because

12

the allegations were already publicly known.[10]  Carefully assessing the gains from the documents that were ordered produced, the trial court reasonably concluded that Voice's intervention conferred only an *in*substantial benefit.

The court's reasoning is further supported by Voice's own verified pleading.  Challenging the District's conduct, Voice alleged that the first records production "amount[ed] to nothing more than Burgess's complaint against the DISTRICT for the suspension he endured" and had "nothing to do with the underlying allegations, the DISTRICT's investigation of the allegations, if any, and the outcome of that investigation."  The second production fared no better; Voice explained that it "offer[ed] no additional documents relating to the DISTRICT's investigation of the claims of sexual misconduct made against Burgess nor the outcome of such an investigation or investigations if they were performed, and instead release[d] only public comments and correspondence relating to Burgess."  As Voice put it, "[T]he DISTRICT, in total, disclosed a de minimis set of records including publicly available court filings made by Burgess in response to his suspension by the DISTRICT and public letter and comments made to the DISTRICT relating to Burgess."

Voice renews its argument on appeal that the records were de minimis in volume rather than substance.  But as we read its pleading, Voice sued the District precisely because both sets of records revealed almost nothing regarding the underlying allegations or the District's actions in response.  In

10    The court's ruling did not specifically address letters from the Commission on Teacher Credentialing to the District.  But these letters likewise did not disclose information that was confidential in nature.  In September 2017, the Commission sent a two-line acknowledgement letter to the District confirming receipt of the District's letter.  It followed up with a brief letter in January 2018 indicating "no adverse action is warranted at this time"—a fact apparent given Burgess's reinstatement.

other words, there was no *substantive* benefit. The court reasonably reached the same conclusion based on its review of the records produced.

Sexual misconduct allegations concerning a school employee and Voice's vindication of rights under the PRA undoubtedly implicate matters of substantial public concern. But that does not resolve whether Voice's intervention in this case, facilitated by the efforts of its counsel, produced a substantial public benefit. The mere *possibility* that intervention might result in a substantial public benefit does not mean a significant benefit was ultimately conferred. (See *Woodland Hills, supra,* 23 Cal.3d at p. 939 [section 1021.5 does not authorize attorney's fees "in every case involving a statutory violation"].) A court "must carefully walk the line between unreasonably transmuting section 1021.5 into an unwarranted cornucopia of attorney fees for those who intervene in, or initiate litigation against, private parties under the guise of benefiting the public interest while actually performing duplicative, unnecessary, and valueless services, and providing appropriate compensation under that statute in cases where the colitigating private party does render necessary, significant services of value and benefit to the public." (*Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 643–644.) Realistically assessing the value of materials produced, the trial court reasonably found that Voice's intervention in this case led to the release of only insignificant, insubstantial records, which did not warrant an award of attorney's fees.

Without fee-shifting, Voice claims that few news outlets would intervene in actions like this to protect public access. It notes that a party requesting records under the PRA "has no access to the content of the records before securing the court's order for disclosure, such that denial of a fee motion after prevailing in the substantive action results in a subjective

14

lottery." While these observations surely underscore the challenges of intervention in reverse-PRA litigation, the substantial benefit requirement also serves to discourage wasteful litigation. On our record, the court acted reasonably in denying Voice's request.

## DISPOSITION

The order denying Voice's request for attorney's fees is affirmed. Burgess is entitled to his appellate costs.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


AARON, J.


15